IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIA VOLZ, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-00627 |
| ) | |
| TRICORP MANAGEMENT COMPANY, ) | Judge: TBD |
| TRICORP FOOD SERVICES, INC., ) | |
| TRICORP ENTERPRISES, LTD., ) | **JURY TRIAL DEMANDED** |
| TRICORP, INCORPORATED, ) | |
| TRICORP HOLDING, LLC, ) | |
| PRIMROSE RESTAURANT PROPERTIES, L.P., ) | |
| FAIRVIEW HEIGHTS BISTRO, LLC, ) | |
| STEPHEN BELL, ) | |
| BRADLEY BAX, AND ) | |
| DOE DEFENDANTS 1-10, ) | |
| ) | |
|    *Defendants*. ) | |

### PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Jania Volz ("Plaintiff"), by her undersigned attorney, on her own behalf and on behalf of all others similarly situated, upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, brings this putative collective and class action against Defendants Tricorp Management Company, Tricorp Food Services, Inc., Tricorp Enterprises, Ltd., Tricorp, Inc., Tricorp Holding, LLC, Primrose Restaurant Properties, L.P., Fairview Heights Bistro, LLC, Stephen Bell, Bradly Bax, and Doe Defendants 1-10, (hereinafter collectively referred to as "Defendants"), and alleges as follows:

### NATURE OF THE CASE

1. Through this action, Plaintiff seeks to recover minimum wages for herself and other similarly-situated co-workers – servers, bussers, runners, bartenders, barbacks, hosts, and other "tipped workers" – who work or have worked for Defendants at, at least, T.G.I. Friday's franchised

restaurants owned and/or operated by Defendants in Illinois, Missouri, Arkansas, Kansas, and Oklahoma.

2. Defendants, a group of related corporate entities and individuals with interests within those corporate entities, manage various T.G.I Friday's franchised restaurants which employ approximately 900 employees. Many of these employees work as "tipped workers."

3. Defendants are among the largest T.G.I. Friday's franchisers in the United States.

4. Defendants have maintained control, oversight, and direction over Plaintiff and similarly-situated employees, including the ability to hire, fire, and discipline them.

5. At all times relevant, Defendants have paid Plaintiff at a "tipped" minimum wage rate – less than the full minimum wage rate for non-tipped workers.

6. Defendants, however, have not satisfied the strict requirements under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, or the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1, *et seq.*, which would allow them to pay this reduced minimum wage (*i.e.,* take a "tip credit").

7. Specifically, Defendants maintain a policy and practice whereby tipped workers are required to spend a substantial amount of time performing non-tip producing "side work" including, but not limited to, general cleaning of the restaurant, preparing food in bulk for customers, cutting produce, refilling condiments, and stocking and replenishing the bar and service areas.

8. Defendants require tipped workers to perform side work at the start and end of every shift.

9. Defendants typically schedule tipped workers to work lunch, dinner, or a "swing" shift.

10. Regardless of the type of shift, Defendants require tipped workers to perform side word at the start and end of each shift.

11. Defendants require tipped workers to perform most side work before the restaurant is open or after the restaurant has closed and customers have left.

12. For instance, Defendants typically require tipped workers to (i) arrive at least an hour prior to the start of customer service – Plaintiff Volz was required to arrive at 9:00AM but the restaurant did not open to customers until 11:00AM – and (ii) stay at work approximately two hours after the restaurant closes.

13. During these periods Defendants required tipped workers to perform side work.

14. As a result, tipped workers spend in excess of two hours and more than twenty percent of their work-time engaged in side-work duties.

15. Defendants pay tipped workers for this work at or below the reduced tip credit minimum wage rate.

16. The duties that Defendants require tipped workers to perform are duties that are customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

17. The side work that Defendants require tipped workers to perform includes, but is not limited to: (1) setting up the expeditor line in the back of the house (filling bins with ice, lettuce, tomatoes, condiments, and sauces); (2) cutting lemons; (3) setting up dishes and glassware at the bar; (4) slicing garnishes for the bar; (5) lining baskets with wax paper for hamburgers; (6) assembling stacks of sliced tomatoes, pickles, and onions to be used to dress hamburgers; (7) breaking down sheets of premade desserts into smaller pieces; (8) stocking server stations with plates, glasses, and silverware; (9) rolling silverware; (10) sweeping and mopping floors; (11) stocking "to-go" containers; (12) dusting window blinds and windowsills; (13) cleaning and breaking down the expeditor's line, soup station, and salad area; (14) taking out garbage; (15) cleaning the customer bathroom; (16)

brewing large batches of tea and coffee; and (17) breaking down and cleaning the tea/coffee and soda stations.

18. The side work described above is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts. Moreover, as these duties are not related to Plaintiff and other similarly-situated workers' duties as tipped workers, Plaintiff and those similarly situated are entitled to the full minimum wage.

19. Defendants' timekeeping system is capable of tracking multiple job codes for different work assignments.

20. Defendants kept Plaintiff and other similarly-situated employees from tracking different work assignments and differentiating between tipped work and non-tipped work.

21. Defendants maintain a policy and practice whereby tipped workers are required to wear uniforms featuring the T.G.I. Friday's logo. Additionally, tipped workers must wear plain black pants, a plain black belt, and plain, all black slip-resistant shoes.

22. Defendants maintain a dress-code policy that requires tipped workers' uniforms to be "clean" and "wrinkle free."

23. Defendants do not supply tipped workers with a sufficient number of uniforms for multiple shifts.

24. Plaintiff and other similarly-situated tipped employees are forced to by plain black: (1) pants, (2) belt(s), and (3) slip resistant shoes.

25. Defendants do not launder tipped workers' uniforms.

26. Defendants require Plaintiff and other tipped workers to pay for the cleaning and maintenance of their uniforms.

27. Defendants also maintain a policy and practice whereby they take unlawful deductions from tipped workers' wages.

28. Defendants require tipped workers to pay customers' bills when the customers walk out of the restaurant without paying for their meals, commonly referred to as a "customer walkout."

29. Additionally, Defendants require tipped workers to pay for any amount that a drawer/register is "short" – defined by Defendants as more than $3.00 different than the amount of money a drawer should contain, as calculated by Defendants

30. As a result, Plaintiff brings this collective and class action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1, *et seq.*, to recover unpaid minimum wages and other damages owed to herself and to all others similarly situated.

## THE PARTIES

31. Plaintiff Jania Volz ("Volz") is an individual citizen of the State of Illinois. Ms. Volz resides in Fairview Heights, Illinois.

32. Ms. Volz has been employed by Defendants as a bartender at the T.G.I. Friday's restaurant located at 6900 North Illinois Street, Fairview Heights, Illinois 62208.

33. Ms. Volz is a covered employee within the meaning of the FLSA and IMWL.

34. Ms. Volz's written consent form is filed herewith as Exhibit A.

35. Defendant Tricorp Management Company is a Missouri corporation with its principal place of business at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005. Tricorp Management Company may be served through its registered agent, Mr. Mark Z. Schraier, at 7700 Forsyth Blvd., Suite 1100, St. Louis, Missouri 63105.

36. Defendant Tricorp Food Services, Inc. is a Missouri corporation with its principal place of business at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005. Tricorp Food Services, Inc. may be served through its registered agent, Mr. Bradley Bax, at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005.

37. Defendant Tricorp Enterprises, Ltd. is a Missouri corporation with its principal place of business at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005. Tricorp Enterprises, Ltd. may be served through its registered agent, Mr. Bradley Bax, at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005.

38. Defendant Tricorp, Inc. is a Missouri corporation with its principal place of business at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005. Tricorp, Inc. may be served through its registered agent, Mr. Stephen Bell, at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005.

39. Defendant Tricorp Holding, LLC is a Missouri limited liability company with its principal place of business at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005. Tricorp Holding, LLC may be served through its registered agent, Mr. Bradley Bax, at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005.

40. Defendant Primrose Restaurant Properties, L.P. is a Missouri limited partnership with its principal place of business at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005. Primrose Restaurant Properties, L.P. may be served through its registered agent, Mr. Stephen Bell, at 733 Crown Industrial Court, Suite V, Chesterfield, Missouri 63005.

41. Defendant Fairview Heights Bistro, LLC, is an Illinois limited liability company with its principal place of business at 733 Crown Industrial Court, Suite V, Chesterfield, MO 63005. Fairview Heights Bistro, LLC may be served through its registered agent, Mr. Bradley Bax, at 6910 North Illinois Street, Fairview Heights, Illinois 62208.

42. Defendant Stephen Bell is an individual citizen of the State of Missouri. Mr. Bell may be served at 733 Crown Industrial Court, Suite V, Chesterfield, MO 63005.

43. Defendant Bradly Bax is an individual citizen of the State of Missouri. Mr. Bax may be served at 733 Crown Industrial Court, Suite V, Chesterfield, MO 63005.

44. Doe Defendants 1-10 may include other related entities discovered as discovery in this litigation progresses.

## JURISDICTION AND VENUE

45. This Court has federal-question subject-matter jurisdiction pursuant to 29 U.S.C. §216(b) and 28 U.S.C. § 1331.

46. Further, this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2) based on the minimal diversity of citizenship between Plaintiff and Defendants and an amount in controversy exceeding $5,000,000.

47. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367(a).

48. This Court has personal jurisdiction over the Defendants because Defendants regularly and systematically conduct business in this District.

49. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants transact business within this District and the actions giving rise to Plaintiff's injuries took place in this District, in St. Clair County, Illinois.

## FACTUAL ALLEGATIONS

50. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

51. Defendants did not pay Ms. Volz the proper minimum wages for all of the time that she was suffered or permitted to work each workweek.

52. Throughout the duration of her employment for Defendants, Ms. Volz received bi-weekly paychecks from Defendants that did not properly record or adequately compensate her for all the hours she worked.

53. Defendants paid Ms. Volz at the Illinois tipped minimum wage rate.

54. Defendants did not provide Ms. Volz with notification of the tipped minimum wage or tip credit provisions of the FLSA or the IMWL, or their intent to apply a tip credit to her wages.

55. Defendants required Ms. Volz to spend at least 20% of her shift performing non-tipped work wholly unrelated to her duties as a tipped worker. These duties included, but are not limited to, running silverware through the dishwashing machine, sorting silverware, rolling silverware, breaking down side stands, breaking down and cleaning the soda machine and coffee machine, setting up burger bins, cutting lemons, sweeping, wiping down booths and chairs, stocking plates, napkins, cups, and to-go containers, cleaning doors and windows, and setting up and breaking down the expeditor line.

56. Although Ms. Volz should have been paid the full minimum wage, Defendants paid her an hourly rate that fell below the minimum wage to which she was entitled.

57. During her employment, Ms. Volz generally worked the following scheduled hours unless she missed time for vacation, sick days, or holidays:

- Tuesday through Friday, and Sunday – 9:00 AM to 4:00 PM; or
- Wednesday through Saturday – 9:00 AM to 4:00 PM.

58. Defendants required Ms. Volz to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, black belt, and black socks.

59. Defendants did not launder and/or maintain Ms. Volz's mandatory uniform, and failed to pay Ms. Volz the required weekly uniform-maintenance amount in addition to the required minimum wage.

60. Defendants maintained a policy that would deduct money from Ms. Volz paycheck if she had a customer walkout or a short register.

61. Defendants did not keep accurate records of wages or tips earned, hours worked by Ms. Volz, or job duties performed in various positions.

62. Defendants failed to furnish Ms. Volz with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) and Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class and subclasses of persons similarly situated and seeking relief, and defined as:

**The FLSA Collective Class**
All current and former tipped workers employed by Defendants who were subjected to sub-minimum wage pay for non-tipped duties within three years preceding the date of filing this action through final judgment in this matter, and who elect to opt-in to this action;

**The Illinois Subclass**
All current and former tipped workers employed by Defendants who were subjected to sub-minimum wage pay for non-tipped duties within three years preceding the date of filing this action through final judgment in this matter

The FLSA Collective Class and The Illinois Subclass are collectively referred to herein as the "Class" or the "Subclass" and/or "Illinois Subclass," unless otherwise indicated. Plaintiff reserves the right to add, amend, modify, or further define the Class or Subclass and/or to move for certification of a class or classes defined differently than set forth above depending on the facts or law as discovered in this action.

64. Plaintiff asserts claims against Defendants individually and on behalf of all Class and Subclass members for violations of the law as set forth below.

65. The members of the Class and Subclass are ascertainable from objective criteria.

66. If necessary to preserve the case as a collective or class action, the Court itself can redefine the Class or Subclass, create additional subclasses, or both.

67. The requirements of Rule 23(a) are satisfied for the proposed classes because the members of the proposed classes are so numerous and geographically dispersed that joinder of all its members is impracticable.

68. Upon information and belief there are more than 50 Illinois Subclass members.

69. Therefore, the "numerosity" requirement of Rule 23(a)(1) is met.

70. The commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law or fact common to Plaintiff and the other members of the proposed Class and Subclass that predominate over questions affecting only individual members of the Class and Subclass. Among those common questions of law or fact are, but are not limited to, the following:

   a. whether Defendants failed to pay adequate minimum wages to tipped employees in violations of the FLSA.

   b. whether Defendants violated the IMWL and supporting regulations;

   c. whether Defendants employed Plaintiff and the Illinois Subclass Members within the meaning of the IMWL;

   d. whether Defendants paid Plaintiff and the Illinois Subclass Members at the proper minimum wage rate for all hours worked;

   e. whether Defendants had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to Plaintiff and the Illinois Subclass Members;

   f. what notice is required in order for Defendants to take a tip credit under Illinois law;

   g. whether Defendants kept complete and accurate records of Plaintiff and other Class and Illinois Subclass members work time in accordance with Illinois Law;

   h. at what common rate, or rates subject to common methods of calculation, Defendants were required to pay Plaintiff and the Illinois Subclass Members for their work;

   i. whether Defendants have a policy of requiring tipped employees to engage in side work for two hours or more per day and/or for more than twenty percent of their time at work in violation of the IMWL;

   j. whether Defendants misappropriated tips from Plaintiff and the Illinois Subclass Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiff and the Illinois Subclass Members, and which customers reasonably believed to be gratuities for Plaintiff and the Illinois Subclass Members;

   k. whether Defendants failed to pay Plaintiff and the Illinois Subclass Members for uniform-related expenses;

      l. whether Defendants made unlawful deductions from wages paid to Plaintiff and the Illinois Subclass Members; and

      m. whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Illinois Subclass Members, and other records required by the IMWL.

71. Plaintiff's claims are typical of the claims of the proposed classes that she seeks to represent, as described above, because they arise from the same course of conduct and policies and procedures of Defendants and are based on the same legal theories. Further, Plaintiff has sustained legal injuries arising from Defendants' conduct, as alleged herein, and Plaintiff seeks the same forms of relief for herself and the proposed classes. Therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

72. Because her claims are typical of the proposed classes that Plaintiff seeks to represent, Plaintiff has every incentive to pursue those claims vigorously. Plaintiff has no conflicts with, or interests antagonistic to, the proposed classes. Plaintiff, a victim of Defendants' illegal pay practices and violations of federal and state minimum wage laws, is committed to the vigorous prosecution of this action, which is reflected in their retention of competent counsel experienced in complex and challenging litigation.

73. Plaintiff's counsel satisfies the requirements of Rule 23(g) to serve as counsel for the proposed class. Plaintiff's counsel (a) has identified and thoroughly investigated the claims set forth herein, (b) has been in the past, and is currently, involved in complex wage-and-hour litigation; (c) has extensive knowledge of the applicable law; and (d) is committed to the vigorous prosecution of this action on behalf of the proposed class. Accordingly, Plaintiff satisfies the adequacy of representation requirements of Rule 23(a)(4).

74. In addition, this action meets the requirements of Rule 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Plaintiff and other members of the proposed

classes, making final injunctive or corresponding declaratory relief with respect to the proposed classes appropriate.

75. This action also meets the requirements of Rule 23(b)(3). Common questions of law or fact, including those set forth above, exist as to the claims of all members of the proposed classes and predominate over questions affecting only individual class members, and a class action is the superior method – if not the only method – for the fair and efficient adjudication of this controversy.

76. Class treatment will permit large numbers of similarly-situated tipped workers to prosecute their respective claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce. Further, by prosecuting this case as a collective or class action, class members, who may be current employees of Defendants', may receive just compensation for the work performed for Defendants without fear of retaliation for seeking just compensation.

77. Further, notice may be provided to members of the proposed class by including notice with each potential class members paycheck stub, first-class mail to addresses maintained for each employee by Defendants, and through the alternative means, including electronic mail (email), social network posting (i.e, Facebook posts), and job-site postings.

78. Finally, the collective and class action is an appropriate method for the fair and efficient adjudication of this controversy given the following:

    a.   all putative class and subclass members are "similarly situated;"

    b.   common questions of fact and law predominate over any individual questions that may arise, such that the class action mechanism is superior to other available means for the fair and efficient adjudication of this dispute;

    c.   there will be enormous economies to the Court and the parties in litigating the common issues in a class action instead of individual claims;

  d. class treatment is required for optimal resolution of this matter and for limiting the court-awarded reasonable legal expenses incurred by class members;

  e. if the size of individual class members' claims are small, their aggregate volume, coupled with the economies of scale in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with the cost of individual litigation; and

  f. the trial of this case as a class action will be fair and efficient because the questions of law and fact which are common to the Plaintiff, the FLSA Collective Class, and the Subclasses predominate over any individual issues that may arise.

## CLAIMS FOR RELIEF
### COUNT I – ON BEHALF OF THE FLSA COLLECTIVE CLASS
### FAILURE TO PAY MINIMUM WAGES UNDER THE FAIR LABOR STANDARDS ACT

  79. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 78, as if fully set forth herein.

  80. Defendants are subject to the minimum wage requirements of the FLSA, 29 U.S.C. § 201 *et seq.*, including, but not limited to, 29 U.S.C. §§ 203, because Defendants are an enterprise engaged in interstate commerce and its employees, including tipped workers, are engaged in commerce.

  81. Defendants were required to pay directly to Plaintiff and the FLSA Collective Class Members the applicable minimum wage rate for all hours worked.

  82. Defendants failed to pay Plaintiff and the FLSA Collective Class Members the minimum wages to which they are entitled.

  83. Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiff and FLSA Collective Members of the provisions of subsection 203(m) of the FLSA, and distributed a portion of their tips to workers who do not "customarily and regularly" receive tips.

84. Defendants also required Plaintiff and the FLSA Collective Class Members to perform a substantial amount of non-tipped "side work" in excess of twenty percent of their work time. During these periods, Defendants compensated Plaintiff and the FLSA Collective Members at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq*.

85. Plaintiff and all similarly-situated employees are victims of a uniform and employer-based compensation policy. This uniform policy, violative of the FLSA, has been applied, and upon information and belief, continues to be applied to all members of the FLSA Collective Class.

86. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Members.

87. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, along with periods of equitable tolling, pursuant to 29 U.S.C. §§ 201 *et seq*.

88. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

### COUNT II – ON BEHALF OF THE ILLINOIS SUBCLASS
### VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

89. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88, as if fully set forth herein.

90. At all times relevant hereto, Plaintiff and Illinois Subclass members have been entitled to the rights, protections, and benefits provided under the IMWL, 820 Ill. Comp. Stat. 105/1, *et seq*.

91. The IMWL regulates, among other things, the payment of minimum wage by employers to employees, subject to limited exemptions not applicable herein. *Id.*

92. During all times relevant to this action, Defendants were the "employer" of Plaintiff, and Illinois Subclass members within the meaning of the IMWL. 820 Ill. Comp. Stat. 105/3(c).

93. During all times relevant to this action, Plaintiff and Illinois Subclass members were Defendants' "employees" within the meaning of the IMWL. 820 Ill. Comp. Stat. 105/3(d).

94. Pursuant to the IMWL, during the relevant time period, employees were entitled to be compensated at a rate of $8.25 per hour for non-tipped work, and $4.95 per hour for tipped work, provided that the amount of tips earned equated to a rate of hourly pay of at least that otherwise required by the IMWL. 820 Ill. Comp. Stat. 105/4.

95. Defendants, pursuant to their policy and practice, violated the IMWL by refusing and failing to pay Plaintiff and other similarly-situated employees adequate minimum wages for work performed for Defendants, including non-tipped side work.

96. Plaintiff and Illinois Subclass members are victims of a uniform and employer-based compensation policy. Upon information and belief, this uniform policy, violative of the IMWL, has been applied, and continues to be applied to all Illinois Subclass members who are employed or were employed by Defendants.

97. Plaintiff and all other similarly-situated employees are entitled to damages including payment of minimum wages for time spent working for Defendants for which Defendants did not pay adequate minimum wages, and additional damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid.

98. Further, Plaintiff and other similarly-situated employees are entitled to an award of pre- and post-judgment interest at the applicable legal rate.

99. Finally, Defendants are liable for Plaintiff's costs and attorney's fees incurred in this action.

### COUNT III – ON BEHALF OF THE ILLINOIS SUBCLASS
### BREACH OF CONTRACT

100. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 99, as if fully set forth herein.

101. During all times relevant to this action, Plaintiff and all others similarly situated entered into implied contracts with Defendants whereby such persons agreed to perform services as part of their employment by Defendants and Defendants agreed to compensate such persons for all such services based upon specified hourly rates of pay ("the Contracts").

102. Defendants breached and violated the Contracts by failing to pay Plaintiff and all others similarly situated for time worked.

103. Prior to Defendants' breach and violation of the Contracts, Plaintiff and all others similarly situated performed their duties under the Contracts.

104. As a direct and proximate result of Defendants' violations and breaches of the Contracts, as stated above, Plaintiff and all others similarly situated have been damaged.

105. Plaintiff and all similarly-situated tipped employees are entitled to damages equal to all unpaid wages due within five (5) years preceding the filing of this Complaint plus periods of equitable tolling.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, individually and on behalf of all others similarly situated, pray for relief as follows:

A. an order from the Court certifying the FLSA Collective Class identified herein as an FLSA collective action and as a class action pursuant to Fed. R. Civ. P. 23(b) and (c) and appointing Plaintiff as class or subclass representative and appointing her counsel to represent the FLSA Collective Class;

B. an order from the Court certifying the Illinois Subclass identified herein as a class action pursuant to Fed. R. Civ. P. 23(b) and (c) and appointing Plaintiff class representative and her counsel to represent the Illinois Subclass;

C. an order from the Court awarding Plaintiff and Class and Subclass members their unpaid wages in an amount to be proven at trial;

D. an order from the Court awarding Plaintiff and Class and Subclass members compensatory damages in an amount to be proven at trial;

E. an order from the Court awarding Plaintiff and Class and Subclass members liquidated damages in an amount set by applicable law and to be proven at trial;

F. an order from the Court awarding Plaintiff and Class and Subclass members pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other costs as may be available under law; and

G. an order from the Court awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues so triable.

Dated: June 5, 2015

Respectfully submitted,
Plaintiff Jania Volz,

BY HER ATTORNEY AND ATTORNEY FOR THE PUTATIVE CLASS AND SUBCLASS,

*/s/ Brandon M. Wise*
Brandon M. Wise – No. 67242
THE WISE FIRM LLC
5215 KINGWOOD DRIVE
St. Louis, MO 63123
Ph: (217) 710-1403
Email: brandon.wise@thewisefirm.com